**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg**

**KILTON L. KITCHEN,**

Petitioner,

**v.**                                                  **CIVIL ACTION NO. 1:16-CV-169**
                                                        Judge Bailey

**DONALD AMES,**

Respondent.

**REPORT AND RECOMMENDATION**

**I.  INTRODUCTION**

On August 5, 2016, petitioner, acting *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  [Doc. 1].  On August 3, 2017, Magistrate Judge Aloi entered a Report and Recommendation ("R&R") [Doc. 32] finding that petitioner had submitted a mixed petition, containing both exhausted and unexhausted claims. Accordingly, he recommended that the case be stayed, that petitioner be directed to file his state court claims within 30 days of the stay being entered, that petitioner file quarterly reports beginning January 1, 2018, and that petitioner file a Notice of Exhaustion within 30 days from the date his state court remedies had been exhausted.  That R&R was adopted without objection.  [Doc. 34].  On May 7, 2020, petitioner informed the Court that his state court habeas appeal had been denied by the West Virginia Supreme Court of Appeals and his motion for rehearing refused.  [Doc. 67].  On June 30, 2020, petitioner filed an amended Petition.  [Doc. 74].  Then, on November 9, 2020, respondent filed an

answer to the petition.   [Doc. 81].   Therein, respondent argues that this Court should dismiss petitioner's claims.   The matter is now pending before this Court for a review and Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

## II.  FACTUAL AND PROCEDURAL HISTORY[1]

### A.   Conviction and Sentence

On February 26, 2009, petitioner was indicted for murder and conspiracy to commit murder. [Doc. 14-1].  Following a jury trial, petitioner was convicted of both counts and was sentenced on September 17, 2009, to a term of life, with mercy for the murder conviction and an indeterminate term of not less than one year nor more than five years for the conspiracy conviction.  [Doc. 14-2 at 4].  The trial court did not impose a fine and ordered that the sentences run consecutively. Id.

### B.   Direct Appeal

On April 14, 2010, petitioner filed a Petition for Appeal with the West Virginia Supreme Court of Appeals ("WVSCA"). [Doc. 14-6].   In the appeal, he set forth two assignments of error: (1) there was insufficient evidence to support a conviction; and (2) the circuit court erred in denying his motion to view the crime scene. Id. at 9.  The WVSCA refused the petition for direct appeal by order entered on September 9, 2010.  [Doc. 14-5].

### C.   First State Habeas Corpus Petition

The petitioner filed a Petition for Writ of Habeas Corpus under West Virginia Code § 53-4A-1 on August 29, 2011. [Doc. 14-2 at 2].  Thereafter, a succession of lawyers were appointed to represent him. It would appear that the third attorney appointed, April

---

[1] The beginning of this section is adapted from Magistrate Judge Aloi's August 3, 2017 Report and Recommendation in this case, [Doc. 32].

Mallow, filed an amended petition on August 20, 2012.  Subsequently, on March 4, 2013, Ms. Mallow filed a supplement. On September 6, 2013, an Order was entered permitting Ms. Mallow to withdraw and appointing Jonie Nelson as counsel for Petitioner.   Ms. Nelson filed a Second Supplemental Petition for Post-Conviction Relief on June 25, 2014. An omnibus hearing was conducted on February 18, 2015.  On March 1, 2015, the Circuit Court entered an Order denying petitioner relief.   The Order addressed the following claims: (1) prejudicial pretrial publicity in Hampshire County; (2) failure of counsel to take an appeal; (3) consecutive sentences for same transaction; (4) state's knowing use of perjured testimony by John Boyce; (5) ineffective assistance of counsel for failing to move for a change of venue due to prejudicial pretrial publicity; (6) ineffective assistance of counsel for failing to object to several instances of hearsay throughout the trial; (7) ineffective assistance of counsel for failing to object to the trial testimony of Ralph Bandy; (8) ineffective assistance of counsel for failing to object to the testimony of John Boyce; (9) ineffective assistance of counsel for failing to poll the jury after the guilty verdict was returned; (10) ineffective assistance of counsel for failing to move to sequester the jury; (11) ineffective assistance of counsel for failing to provide a competent appeal, by failing to cite any legal authority and failing to provide a legal argument in support of the two claims for appeal; (12) ineffective assistance of counsel for failing to object to errors by both the prosecutor and trial court; (13) excessiveness or denial of bail; (14) prosecutorial misconduct by interjecting his personal opinions about the credibility of witnesses, arguing facts outside of evidence, and giving his opinion about the guilt of petitioner; (15) prosecutorial misconduct by failing to acknowledge the perjured testimony of John Boyce and the lack of competency of John Boyce; (16) error by trial court in permitting the

testimony of John Boyce, who was not competent to testify; (17) error by trial court in instructing petitioner not to show any emotion during the trial and not to shake his head in disagreement; (18) lack of sufficient evidence; more severe sentence than expected; (19) excessive sentences; and (20) irregularities in arrest.

### D.    First State Habeas Corpus Appeal

The petitioner appealed the Circuit Court's ruling to the WVSCA.  In his brief, filed by counsel, he asserted the following grounds for relief: (1) the circuit court erred by finding that John Boyce was competent to testify; (2) the circuit court erred by denying habeas relief when the Prosecuting Attorney interjected his personal beliefs about the credibility of the witnesses, interjected his personal belief about the credibility of defense witness, and argued facts outside of evidence; (3) the circuit court erred by denying habeas relief when the Prosecuting Attorney presented the testimony of John Boyce despite the inconsistent statements made by him; (4) the circuit court erred by denying habeas relief when the Prosecuting Attorney called a witness to testify whose testimony was based on hearsay; and (5) the Circuit court erred by denying habeas relief when trial counsel was ineffective for failing to object to the competency of John Boyce and failed to object to the prejudicial comments made by the Prosecuting Attorney.  The WVSCA found the petitioner's assignments or error to be without merit and denied his requested relief.  In entering its decision, the WVSCA specifically noted that the Petitioner did not appeal all the claims raised in his habeas petition. ***Kitchen v. Ballard***, No. 15-0463, 2016 WL 2970055, at *2 n.2 (W.Va. May 20, 2016) ("Petitioner's appeal to this Court does not raise all of the claims raised in his petition.").

### E.   Federal Habeas Petition

On August 5, 2016, petitioner initiated this case by filing his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. 1].   On November 14, 2016, the respondent filed a Motion to Dismiss Petition for Petitioner's Failure to Exhaust his State Remedies [Doc. 14].   In response, petitioner filed a Motion for Stay and Abeyance [Doc. 29].   Therein, petitioner asserted that he had believed all grounds had been properly exhausted, that he had had problems with his habeas counsel, and that he filed his federal habeas because he believed he had only a few days left to timely file.   He asked that the case be stayed so that he could pursue all unexhausted grounds.   In his Report and Recommendation, Magistrate Judge Aloi concluded that the petition presented both exhausted and unexhausted claims, and found that good cause existed for granting a stay.  [Doc. 32].   On August 28, 2017, Judge Keeley adopted the Report and Recommendation, stayed this case, and directed petitioner to file his unexhausted claims in state court.  [Doc. 34].

### F.   Second State Habeas Corpus Petition

As summarized by the WVSCA, "[o]n October 26, 2017, petitioner filed a second [state] habeas petition, alleging that numerous grounds were not fully and finally adjudicated and/or waived in the first such proceeding due to the ineffective assistance of habeas counsel.   By order entered June 15, 2018, the circuit court determined a hearing was not necessary and that the claim that habeas counsel provided ineffective assistance was without merit.   Accordingly, the circuit court found that the petition was

barred by the doctrine of res judicata and denied relief." *Kitchen v. Ames*, No. 18-0554, 2019 WL 6998678, at *3 (W.Va. Dec. 20, 2019).

### G.    Second State Habeas Corpus Appeal

The WVSCA affirmed the decision of the circuit court on May 20, 2016. *Kitchen v. Ames*, No. 18-0554, 2019 WL 6998678.   In that case, petitioner raised three assignments of error: first, that the circuit court erred in finding that John Boyce was competent to testify at trial; second, that the prosecutor interjected personal opinion regarding the credibility of the evidence and witnesses, made inflammatory remarks during closing argument, and presented false and hearsay testimony; and third, that his trial counsel was ineffective for failing to object to the competency of John Boyce and to the prosecutor's prejudicial comments. *Id.*

### H.    The Instant Petition

On May 7, 2020, petitioner filed a Motion to Enlarge the Time to File a Revised § 2254 Federal Habeas Corpus.   [Doc. 68].   This Court granted the Motion, giving petitioner thirty days to file an amended petition, but instructing petitioner that he was prohibited from raising any grounds which were not included in his original § 2254. [Doc. 71].   On June 30, 2020, petitioner filed his Amended Petition.   [Doc. 74].   On November 9, 2020, the respondent filed his response, arguing that this case should be dismissed with prejudice.   [Doc. 81].   Petitioner filed a Motion for an Extension of Time to File Reply to the Response [Doc. 83].   The Court granted the Motion on October 7, 2021, and gave petitioner until November 8, 2021, to file any reply to the response. [Doc. 92]. Petitioner asked for a second extension [Doc. 95], which the Court granted, giving petitioner until December 8, 2021.   [Doc. 96].   Petitioner then asked for a third extension

6

[Doc. 100], which the Court granted, giving petitioner until December 15, 2021. [Doc. 101].  Petitioner asked for a fourth extension [Doc. 102], which the Court granted, giving petitioner until January 14, 2022.  [Doc. 103].  Petitioner asked for a fifth extension [Doc. 105], which the Court granted, giving petitioner until January 21, 2022.  [Doc. 106]. On January 27, 2022, petitioner asked for a sixth extension [Doc. 108], which the Court denied.  [Doc. 109].  Accordingly, petitioner has not filed a reply.  For the reasons that follow, this Court should dismiss the petition.

### III.  LEGAL STANDARD

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; *see also* Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts.

#### B.    Petitions for Habeas Corpus Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  When determining the merits of a § 2254 petition, the district court applies the

standards set forth in § 2254(d), which provides that the habeas petition of a person in State custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, a federal court uses the "highly deferential lens" mandated by the AEDPA. *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 364 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations

omitted). A writ of habeas corpus may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id*. at 300--01 (internal marks omitted).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, the application must also be unreasonable."  *Williams*, 529 U.S. at 365.

## IV.  ANALYSIS

A petition for writ of habeas corpus on behalf of a prisoner in State custody is not to be entertained by a federal court unless the petitioner has first exhausted his State remedies. *See* 28 U.S.C. § 2254(b)(1).  The Supreme Court has held that, to "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).  Principles of comity dictate that the State must first be afforded a full and fair opportunity to pass upon and correct the alleged violation of its prisoners' federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

To exhaust available State remedies, a habeas petitioner must fairly present the substance of his claim to the State's highest court. *See Duncan*, 513 U.S. at 365–66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners'

federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").  In West Virginia, the exhaustion of State remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction State habeas corpus proceeding followed by an appeal to the WVSCA. *See Moore v. Kirby*, 879 F.Supp. 592, 593 (S.D. W.Va. 1995); see also *Bayerle v. Godwin*, 825 F.Supp. 113, 114 (N.D. W.Va. 1993).  A federal court may only consider those issues the petitioner presented to the State court, and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of [the ADEPA], if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

A.    **Petitioner's ineffective assistance claims are without merit.**

The first ground petitioner raises in his petition is that his constitutional rights were violated by ineffective assistance of trial counsel.  He points to four specific failures of his trial counsel.  First, that trial counsel failed to object to trial testimony of Ralph Bundy, which he contends was based on rumor and uncertainty.  He contends that his counsel should have objected when this witness spoke about rumors.  He further contends that "[t]his witness had already been caught in lies and reprimanded."  Second, that trial counsel failed to object to the testimony of John Boyce, who petitioner contends was not competent to testify and who gave perjured testimony.  Third, that trial counsel failed to object to errors made by the prosecutor and trial court.  Fourth, that trial counsel failed to object to prejudicial comments made by the prosecutor.

Criminal defendants have a Sixth Amendment right to effective legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish that counsel's

assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance. *Strickland*, 466 U.S. at 669.

When considering the reasonableness prong of *Strickland*, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also Gray v. Branker*, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" *Gray*, 529 F.3d at 228 (quoting *Strickland*, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

The first *Strickland* prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must

consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir.1991).

The second prong of *Strickland* requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other.

As Judge Hollander stated so well in *Wilson v. United States*, 2016 WL 1366024, at *12–13 (D. Md. April 6, 2016) (Hollander, J.):

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test, which relates to professional competence. In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrison v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished

that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'" *Branker*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington* [*v. Richter*], 562 U.S. at 104 [(2011)]; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.

As to performance, the central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. at 88 (quoting *Strickland*, 466 U.S. at 690).  The Supreme Court said in *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986): "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense."  *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.  *Id*.

As the Supreme Court said in *Padilla* [*v. Kentucky*], 559 U.S. at 371 [(2010)], "Surmounting *Strickland's* high bar is never an easy task."  A

petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." **Berghuis v. Thompkins**, 560 U.S. 370, 390 (2010).

A court need not address both components if one is dispositive. **Jones v. Clarke**, 783 F.3d 987, 991 (4th Cir. 2015). This is because the petitioner must prove both prongs in order to prevail; failure to satisfy either prong is fatal to a petitioner's claim. **Fields v. Attorney Gen. of Maryland**, 956 F.2d 1290, 1297-99 (4th Cir. 1985). As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." **Strickland**, 466 U.S. at 697. Thus, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." **Strickland**, 466 U.S. at 697.

**Wilson v. United States**, 2016 WL 1366024, *12–13.

First, the Court finds that petitioner cannot meet the first prong of **Strickland** in regard to the first sub-ground listed, trial counsel's failure to object to the testimony of Ralph Bandy. Petitioner contends that "[t]his witness spoke about rumors but defense counsel did not even try to impeach witness and did not cross-examine;" and that this witness "had already been caught up in lies and reprimanded." [Doc. 74 at 7]. As related in the trial transcript, Mr. Bandy, indeed, spoke about rumors regarding the murder, and the prosecutor asked him:

Q.      The Radio Shack, okay. And what had you heard about him? Why did you feel sorry for him?

A.      Just rumors going all throughout the whole town of Romney that they beat on him with a ball bat and killed him.

Q.      Now, what – rumors about who doing that?

A.      "J" and I can never –

[Petitioner's trial counsel] Mr. Arnold: Judge, this is double and triple hearsay. I've got to object.

The Court: Objection will be sustained.

[Doc. 81-3 at 157–158].  At the end of Bandy's testimony, defense counsel did not cross examine the witness.  [Id. at 158].  Thanks to defense counsel's objection, there was not testimony regarding the details of the rumors.  Further, as summarized by respondent, "[a] review of Bandy's trial testimony confirms that Bandy did not implicate Petitioner in the murder at all (because of his trial counsel's objection to the hearsay testimony).  Thus, there was no need to cross-examine or 'impeach' Bandy."  [Doc. 81 at 23].  The decision not to cross-examine Bandy falls within conduct that might be considered sound trial strategy, falling far short of a showing of ineffective assistance.  *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Second, petitioner likewise cannot meet the first prong of *Strickland* in regards to his second sub-ground, that his counsel failed to object to the testimony of John Boyce, who petitioner contends "was not competent to testify and gave perjured testimony." [Doc. 74 at 7].  Petitioner raised this same argument in his first state habeas case.  His argument was based on the fact that Boyce gave statements to police, testimony at a preliminary hearing, and cross-examination at trial as to when and how he heard rumors of the murder and whether he heard petitioner admit to the killing.  The Supreme Court of Appeals of West Virginia cited to *State v. Merritt*, 183 W.Va. 601 (1990), pointing out that the Fourth Circuit

> has consistently suggested that every witness is presumed to be competent, and neither feeblemindedness nor insanity renders a witness incompetent or disqualified. The only grounds for disqualifying a party as a witness are that the witness does not have knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully. F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 2.2(B) (2d ed.1986) (citing *United States v. Odom*, 736 F.2d 104 (4th Cir.1984)).

*Kitchen v. Ballard*, No. 15-0463, 2016 WL 2970055, at *3 (W.Va. May 20, 2016) (quoting *Merritt*, 183 W.Va. at 608 (1990)).  The Court went on to reason:

> [I]f we examine Mr. Boyce's testimony in light of our statements in *Merritt,* we find no reason to conclude that he was incompetent to testify. First, his testimony, while inconsistent at times, did not evidence a lack of knowledge about the subject matter upon which he was called to testify at

trial, that is, meeting petitioner on the night of the murder and recounting petitioner's admission to the crime. The police corroborated Mr. Boyce's testimony that he met petitioner at Sheetz by viewing the surveillance video from the store on the night in question. Also, there was corroborating testimony that after meeting at Sheetz, the men left together and went to another location.

Second, Mr. Boyce had the capacity to recall the events of that evening. He testified that petitioner asked him if he had heard about the murder, and then petitioner confessed to it. The fact that there are variations in Mr. Boyce's recollection of the events does not go to his competence; rather, it goes to his credibility. On this point, we have held that "[t]he fact that the testimony of a witness is inconsistent does not render him incompetent as a witness; rather, such inconsistency goes to his credibility." *State v. Butcher,* 165 W.Va. 522, 526, 270 S.E.2d 156, 159 (1980) (citation omitted).

Lastly, petitioner cannot establish the third ground set forth in *Merritt* because there is no evidence to indicate that Mr. Boyce failed to understand his duty to testify truthfully. Mr. Boyce properly took the oath to tell the truth prior to testifying and gave no reason for the trial court to question his understanding of it. Upon our review, petitioner has not demonstrated any error with respect to Mr. Boyce's competency to testify. Accordingly, we reject petitioner's first assignment of error.

*Kitchen v. Ballard*, No. 15-0463, 2016 WL 2970055, at *4 (W. Va. May 20, 2016).  The Supreme Court of Appeals' conclusions on this point are well-supported by federal law, and petitioner cannot overcome the "highly deferential lens" mandated by the AEDPA.

Third, although petitioner contends that "[c]ounsel did not object to any of the Prosecutor's or trial court (sic) errors which violated the petitioner's Constitutional Rights," the petition fails to specify the actions taken by the prosecutor or trial court which he contends were error.  [Doc. 74 at 8].  Without any specific instances given, petitioner is unable to meet either prong of *Strickland*.  Further, this Court agrees with respondent that "[p]etitioner is simply incorrect that his trial counsel failed to object to perceived errors.  The trial transcript is replete with instances in which his trial counsel objected to multiple questions posed by the State to various witnesses, and with remarkable success." [Doc. 81 at 28].  In his state habeas claim (and later in the instant petition), petitioner argued the prosecutor made several remarks in closing which were improper.  First, during rebuttal, the prosecutor stated, "I've dealt with murder cases, ladies and gentlemen, where there wasn't even a body."  [Doc. 81-9 at 22].  Petitioner argued that this statement was improper because it was "intended to ignite the passion of the jury." [Id.].  Second, the prosecutor stated, "[s]ome of the most important evidence, I believe, that you've heard is from the medical professionals, excuse me, Dr. DiAngelo and Dr. Frost," as well as stating, "the witnesses you've heard ladies and gentleman, I believe the most important is John Boyce;" petitioner argued that these comments were improper because they interjected his personal opinion about the weight of the testimony.  [Id.]. Third, the prosecutor stated, ". . . medical examiners don't work for the police, they don't work for me, they don't work for the sheriff's department;" petitioner contends this

statement argued facts outside of the evidence.  [Id. at 23].  Fourth, the prosecutor stated

that expert witnesses "can look at the same evidence, the same circumstances and not

exactly agree; *and I think* that's what we have here to a large extent;" petitioner contends

this was an improper conclusory statement.  [Id.].  Finally, in speaking about the victim,

the prosecutor stated, "He had no reason to be in the backyard, no reason to go down

those steps, no reason to even be close to the step; you examine the photograph, look at

the proximity of these various items and I think you will see that;" petitioner likewise claims

this was improper as a conclusory statement.  [Id.].

This Court finds no basis to support an argument that any of the cited comments

were improper in a closing.  As such, petitioner cannot meet either prong of **Strickland**.

Because the statements were not improper, any objection by petitioner's trial counsel

would have been unlikely to be granted.  Trial counsel's decision not to object, if anything,

appears to have been prudent, and certainly did not fall below an objective standard of

reasonableness.  "Failure to raise a meritless argument can never amount to ineffective

assistance."  **Moore v. United States**, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Fourth, petitioner's claim that his counsel was ineffective by failing to object to

"several prejudicial comments" made by the prosecutor is likewise without merit.  Like the

above claim, the petition does not specify any comments made by the prosecutor

petitioner contends his counsel should have objected to.  Construing petitioner's claims

broadly, petitioner may intend this claim to follow the argument of the fourth ground raised

in his petition, which likewise mirrors the claim he raised in state court.

19

**B.      Petitioner has failed to show any constitutional violation as a result of error by the trial court.**

In his second ground, petitioner argues that his 5th, 6th, and 14th Amendment rights were violated by errors made by the trial court.  First, petitioner contends the trial court erred by permitting the testimony of John Boyce and failing to question his competency.  As set forth above, the Supreme Court of Appeals of West Virginia addressed the issue of Boyce's competency and found that he was competent to testify.

Second, petitioner contends that the trial court erred "by instructing the petitioner not to show any emotion during the trial and not to shake his head in disagreement." [Doc. 74 at 9].  Petitioner contends that this prejudiced the jury against him.  He further contends that at sentencing, the trial judge scolded him for not showing any emotion. [Id.].  Similarly, petitioner's third argument for this ground is that the judge gave him a more severe sentence than expected based upon his lack of emotion at trial.  Petitioner did not present these arguments to the WVSCA and, accordingly, he has waived that claim.  Further, the Court finds that even if these claims were exhausted, they are without merit.  A trial court may prohibit disruptive behavior in the courtroom.  *See, e.g. **Illinois v. Allen***, 397 U.S. 337, 343 (1970) (holding that a defendant can lose right to be present at trial if he acts in a disruptive manner).  As to petitioner's claim that his sentence was more severe than expected, as the respondent points out, the sentences in petitioner's case were both statutorily prescribed.   *See* [Doc. 81 at 35]; W.Va. Code §§ 61-2-2 & 61-10-31.

Next, petitioner contends that the trial court violated his constitutional rights "by denying the petitioner's Motion for a View although the jury requested to view the crime scene." [Doc. 74 at 10].  As discussed above, 28 U.S.C. § 2254 allows a petitioner to

challenge his state conviction "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a) (emphasis added).   "An evidentiary ruling is a cognizable ground for federal habeas corpus relief if it deprived the state court defendant of fundamental fairness."   ***Bundy v. Dugger***, 850 F.2d 1402, 1422 (11th Cir. 1988) (citing ***James v. Wainwright***, 719 F.2d 1125, 1126 (11th Cir. 1983)).   However, the Fourth Circuit has held that the decision to permit a jury view is left to the sound discretion of the trial court.   ***U.S. v. Gadsden***, 215 F. App'x. 283, 286 (4th Cir. 2007); ***Massenberg v. United States***, 19 F.2d 62, 64 (4th Cir. 1927).   Further, in West Virginia, "[a] motion for a jury view lies peculiarly within the discretion of the trial court, and, unless the denial of such view works probable injury to the moving party, the ruling will not be disturbed."   ***Collar v. McMullin***, 107 W.Va. 440, 496 (1929).   Petitioner's only argument for this point is his assertion that in addition to his motion, the jury requested to view the crime scene.   There is nothing to indicate the denial of a jury view violated fundamental fairness, and therefore this claim fails.

Finally, petitioner asserts that his constitutional rights were violated when "[t]he Judge said that we could not speak about the baseball bat in trial, yet when Michael Kline was on the stand, he was permitted to speak about the baseball bat."   [Doc. 74 at 10]. Like his claims about being directed not to show emotion, the claim about Michael Kline's testimony was not presented to the WVSCA and is therefore waived.   Further, even if the claim were properly exhausted, it is meritless.   As respondent points out, the trial transcript clearly shows that Michael Kline's testimony did not include any discussion of the baseball bat.   [Doc. 81-3 at 115—132].   Accordingly, this claim fails.

**C.    Petitioner's claim that his Constitutional rights were violated by the State knowingly using perjured testimony is without merit.**

In his third ground, petitioner claims his 5th, 6th, and 14th Amendment rights were violated "when the State Knowingly Used Perjured Testimony." [Doc. 74 at 11]. Petitioner once again refers to the testimony of John Boyce, this time re-framing the issue and placing blame on the prosecutor for placing Boyce on the stand despite the inconsistencies in his statements. [Id.]. The WVSCA addressed this issue:

As for the prosecutor's presentation of Mr. Boyce's testimony, we have already rejected petitioner's contention that the witness was incompetent. Now, however, petitioner claims that the testimony was false and known by the prosecutor to be false. To succeed on this claim, petitioner "must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." Syl. Pt. 2, in part, ***State ex rel. Franklin v. McBride***, 226 W.Va. 375, 701 S.E.2d 97 (2009). The main inconsistency in Mr. Boyce's testimony is that in the preliminary hearing, Mr. Boyce testified that petitioner did not implicate his brother when he admitted to the murder when they discussed it after meeting at Sheetz; but at trial, Mr. Boyce testified that petitioner did implicate his brother when he admitted to the murder. While the prosecutor may have been aware of inconsistencies in Mr. Boyce's version of the events by viewing his statement to the police compared to his preliminary hearing testimony, there is no reason to conclude that the prosecutor

knowingly introduced false testimony. Inconsistency in Mr. Boyce's testimony does not render his testimony false; rather, it provided fodder for the defense to argue at trial that he was not credible. Regardless, in either of Mr. Boyce's versions of petitioner's admission—that he committed the murder with or without the brother's involvement—the jury consistently heard from Mr. Boyce that petitioner admitted to be being involved. Accordingly, petitioner cannot establish any of the elements set forth in *McBride*.

*Kitchen v. Ballard*, No. 15-0463, 2016 WL 2970055, at *5 (W.Va. May 20, 2016).  The standard used by the Supreme Court of Appeals of West Virginia is in line with Supreme Court precedent.  *See, e.g., U.S. v. Agurs*, 427 U.S. 97, 103 (1976) ("the Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.") (citations omitted)).  This Court finds that the state court's determination was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, nor was it based on an unreasonable determination of the facts presented in the state court proceeding. Accordingly, this ground is without merit.

**D.    Petitioner's allegations of prosecutorial misconduct are without merit.**

In his fourth ground, petitioner argues that his 5th, 6th, and 14th Amendment rights were violated by prosecutorial misconduct; specifically, he claims the prosecutor "improperly interjected his personal belief about the credibility of his witnesses, impermissibly interjected his personal belief about the credibility of defenses (sic) witness,

and impermissibly argued facts outside evidence."  [Doc. 74 at 13].  Further, he contends that the prosecutor violated his rights when he "failed to acknowledge that the medical examiner initially stated that the victim's death was not homicide but accidental."  [Id.]. The petitioner raised largely the same argument as part of his ineffective assistance claim.  As set forth above, this Court finds that the prosecutor's comments were not improper.  Accordingly, this claim is without merit.

### E.    Petitioner's remaining five grounds are improperly raised in the amended petition and should be dismissed.

Petitioner raises five additional grounds for relief, including two for ineffective assistance of habeas counsel and three additional claims for ineffective assistance of trial counsel.  These claims were not raised in the original § 2254 petition in this case.  On May 28, 2020, this Court granted petitioner's motion for an extension of time to file a revised habeas corpus petition.  [Doc. 71].  However, in doing so, this Court granted the Motion with "specific limitations," including: "the petitioner is prohibited from raising any grounds which were not included in his original § 2254."  [Doc. 71 at 2].  Respondent argues that "Petitioner's decision to toss [grounds five through nine] into this Amended Petition stands in direct contravention of this Court's May 28, 2020 Order."  [Doc. 81 at 42].  This Court agrees, and these grounds should therefore be dismissed.

## V.  RECOMMENDATION

For the reasons herein stated, the undersigned recommends that Petitioner's § 2254 Petition for a Writ of Habeas Corpus [**Doc. 1, Doc. 74**] be **DENIED** and **DIMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written**

**objections identifying those portions of the recommendation to which objection is made and the basis for such objections**.  A copy of any objections shall also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).**

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: January 28, 2022.

*/s, James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE